**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LIME CRUNCH INC. and<br>NOW MARKETING SERVICES INC.,<br><br>                  *Plaintiffs,*<br><br>    v.<br><br>CHRISTOPHER JOHANSEN,<br><br>                  *Defendant.* | No. 20 C 5709<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Lime Crunch Inc. and Now Marketing Services Inc.—web-design companies owned and managed by Matthew Hanni—sued Defendant Christopher Johansen for alleged violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7704, and the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030. Johansen prevailed on all claims at summary judgment. (Dkt. 43). Johansen now moves for attorney's fees under CAN-SPAM and Rule 11. (Dkt. 48). For the following reasons, the motion is granted in part.

**BACKGROUND**

The Court has recounted the undisputed facts of this case in its prior summary-judgment opinion. (*See* dkt. 43 at 1–4). Briefly, this was the third in a series of lawsuits involving Matthew Hanni, who owns the plaintiff web-design companies, and Johansen, who was once a salesman for Hanni's companies. (Dkt. 22 at 1–3; Dkt. 43 at 1–2). The two parted ways less than amicably, and Johansen struck out on his own. (Dkt. 43 at 2). He then emailed Plaintiffs' former clients a business

1

solicitation, including to some corporate email addresses hosted by Plaintiffs. (*Id.* at 3). Johansen also sent out other email blasts to this contact list. (*Id.*)

Soon after, Plaintiffs and a third company—Intercove Inc.—sued Johansen and a competitor company that hired him, alleging violations of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act and the Illinois Trade Secrets Act, and tortious interference with prospective business advantage under Illinois common law. (Dkt. 14-1; Dkt. 22 at 2–3), *Intercove Inc. v. Anttix Inc.*, 19 C 1940 (N.D. Ill. Mar. 21, 2019), ECF No. 1. Johansen then sued Plaintiffs in the Circuit Court of Will County, alleging that Now Marketing and Intercove failed to pay commissions owed for his prior work. (Dkt. 49-3); *Johansen v. Now Marketing Servs. Inc.*, No. 19 L 989 (Will Cnty. Cir. Ct. Nov. 19, 2019). While litigating the latter case, Plaintiffs offered to negotiate a settlement and release of all claims and counterclaims. Plaintiffs' counsel noted, "Particularly in light of what is coming down the pike, this strikes me as a prudent idea for everyone involved." (Dkt. 49-3 at 1). This lawsuit followed a few days later. (*See id.*; Dkt. 1).

Shortly after its filing, Johansen sent Plaintiffs a demand to withdraw their Complaint "[p]ursuant to the safe harbor provision of Rule 11." (Dkt. 49-2 at 16). Johansen contended that the doctrine of claim preclusion foreclosed the claims against him because the first federal case had been resolved through an offer of judgment. (*Id.*); *see also Intercove Inc.*, 19 C 1940 (N.D. Ill. June 18, 2020), ECF No. 27. Plaintiffs did not withdraw the Complaint, and Johansen did not move for sanctions. The Court denied Johansen's motion to dismiss based on claim preclusion. (Dkt. 22). During discovery, Johansen sent a second letter urging Plaintiffs to withdraw their Complaint under Rule 11's safe harbor provision and arguing that they had not produced sufficient evidence to confer standing under either CAN-SPAM or CFAA. (Dkt. 49-2 at 18–25). Still, Johansen did

2

not move for sanctions. Nonetheless, the Court ultimately agreed that Plaintiffs failed to adduce sufficient evidence to confer standing under either statute. (Dkt. 43). As the prevailing party at summary judgment, Johansen now seeks $41,209.00 in attorneys' fees under CAN-SPAM, 15 U.S.G. § 7706(g)(4) and Rule 11. (Dkts. 48, 49).

DISCUSSION

## I. CAN-SPAM Award Provision

"Under the bedrock principle known as the 'American Rule,' each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (cleaned up). CAN-SPAM's fee-award provision gives district courts broad discretion to award fees. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 & n.7 (2010) (citing 15 U.S.C. § 7706(g)(4)). It provides: "[T]he court may, in its discretion, . . . assess reasonable costs, including reasonable attorneys' fees, against any party." 15 U.S.C. § 7706(g)(4). The court's discretion, however, is not unlimited. *Hardt*, 560 U.S. at 254.

There is no Supreme Court or Seventh Circuit precedent for the standard governing attorneys' fees under CAN-SPAM. Nor has any other appellate court addressed it. The handful of district courts that have considered such fee awards have followed the "even-handed" approach of *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), which addressed a similar provision of the Copyright Act. *See, e.g., Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 2253296, at *2–4 (W.D. Wash. Aug. 1, 2007); *Asis Internet Servs. v. Optin Glob., Inc.*, No. C-05-05124, 2010 WL 2035327, at *4 (N.D. Cal. May 19, 2010); *Omni Innovations, LLC v. Smartbargains.com, LP*, No. C06-1129, 2010 WL 11682338, at *2 (W.D. Wash. Apr. 22, 2010); *Phillips v. Worldwide Internet Sols., Inc.*, No. C05-5125, 2007 WL 184719, at *2 (N.D. Cal. Jan. 22, 2007). The even-handed approach treats prevailing defendants and prevailing plaintiffs alike. *Fogerty*, 517 U.S. at 534.

The *Fogerty* Court considered the Copyright Act's policy objectives and concluded that the even-handed approach should apply. *See id.* at 522–27. Likewise, this Court considers CAN-SPAM's goals and finds, as other courts have, that the even-handed approach should apply here. The law aims to curb excessive unsolicited fraudulent, deceptive, or pornographic commercial email (i.e., spam emails) and ensure that recipients can opt out of such emails from the same source. *See* 15 U.S.C. § 7701 (congressional findings and policy). It "does not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices." *Gordon v. Virtumundo, Inc.*, 757 F.3d 1040, 1047–48 (9th Cir. 2009) (citing 15 U.S.C. § 7704(a)). In other words, it protects consumers from the worst abuses of spam emails but preserves legitimate business practices like mass-email marketing. CAN-SPAM's enforcement provisions primarily confer standing to sue on the Federal Trade Commission, state attorneys general, and other state and federal agencies. *Id.* (citing 15 U.S.C. § 7706(a), (b), (f)). The statute also gives a limited private right of action to "providers of internet access service" that are "adversely affected by" certain CAN-SPAM violations or by "a pattern or practice" of such violations. *Id.* (citing 15 U.S.C. § 7706(g)).

The modest policy objectives—targeting spam abuse—coupled with the narrow class of private plaintiffs who may sue supports the conclusion that Congress did not intend to promote prolific private CAN-SPAM litigation by awarding attorney's fees more leniently to prevailing plaintiffs than prevailing defendants. *See, e.g.*, *Gordon*, 2007 WL 2253296, at *4 ("Where, as here, a private right of action is so much more limited than, for example, the expansive private right of action in civil rights cases, it follows that protecting plaintiffs' role as 'private attorneys general' does not weigh as heavily into the decision about which standard to apply."). Therefore, as in

*Fogerty*, the even-handed approach to awarding attorney's fees best serves the objectives of CAN-SPAM.

The *Fogerty* Court also approved several "nonexclusive factors" that courts should consider in deciding whether to award attorneys' fees to the prevailing party. 510 U.S. at 534, 535 n.19. They include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 535 n.19 (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). In considering these factors, Courts must remain faithful to the statute's purpose and treat prevailing plaintiffs and defendants alike. *Id.*

It is appropriate here to award attorneys' fees to Johansen. This suit was not entirely frivolous, particularly considering the sparse caselaw on standing to sue under CAN-SPAM.[1] But the circumstances of this case suggest the Plaintiffs' improper motive to gain leverage over Johansen, who was suing them in state court for unpaid compensation. Plaintiffs' counsel suggested that it was in all parties' best interest to settle and negotiate a global release of all claims "[p]articularly in light of what is coming down the pike"—just days before filing suit against Johansen in federal court for the second time. (Dkt. 49-3 at 1).

Moreover, Plaintiffs' inability to provide any evidence demonstrating standing under CAN-SPAM points to the suit's unreasonableness. CAN-SPAM standing has two elements: (1) the plaintiff was an internet access service ("IAS") provider, who (2) was adversely affected by the defendant's conduct that violated CAN-SPAM. 15 U.S.C. § 7706(g)(1). At summary judgment, Plaintiffs presented no evidence that Lime Crunch was a bona fide IAS provider, as required to invoke the statute's limited private right of action. (Dkt. 43 at 4–5). CAN-SPAM defines "internet

---

[1] There is no Supreme Court nor Seventh Circuit caselaw on this subject. To date, only the Ninth Circuit has discussed standing under CAN-SPAM in detail. *Gordon*, 575 F.3d at 1047–57.

access service" as "a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package offered to consumers." 15 U.S.C. § 7706(g); 15 U.S.C. § 7702(11); 47 U.S.C. § 231(e)(4). Though the outer bounds of this definition have not been thoroughly explored in caselaw, the Ninth Circuit has highlighted that Congress did not intend its definition of an IAS provider to include a business or other entity that merely provides email accounts and service. *See Gordon*, 575 F.3d at 1051–52. Here, Hanni operates both businesses from his personal residence, holds no degrees in computer science or computer security, employs no one with such credentials, and focuses his businesses on graphic design and web development. (Dkt. 43 at 1–2). Although Plaintiffs hosted email accounts for clients, they had no other hallmarks of IAS providers. Nothing differentiates them from the "businesses, and educational and nonprofit institutions that carry and receive" email accounts but fall short of IAS provider status. *Gordon*, 575 F.3d at 1052.

Nor could Plaintiffs show that Johansen's emails harmed Lime Crunch. (Dkt. 43 at 6–8). Plaintiffs based their Complaint on three emails that Hanni only learned about when Lime Crunch's clients mentioned them. (Dkt. 43 at 6). Discovery turned up only two more. (*Id.* at 8). From the outset, it was a stretch to credit Plaintiffs' allegations that a handful of emails adversely affected Lime Crunch to the extent Congress envisioned in CAN-SPAM. *See* 15 U.S.C. § 7701(a)(6) ("The growth in unsolicited commercial electronic mail imposes *significant monetary costs* on providers of Internet access services . . . ." (emphasis added)); *see also Gordon*, 575 F.3d at 1054 ("The e-mails at issue in a particular case must, at the very least, contribute to a larger, collective spam problem that caused ISP-type harms."). The shaky allegations grew no firmer in

discovery, yet Plaintiffs pressed forward. Carrying this suit to summary judgment on conclusory allegations unsupported by evidence was not reasonable.

Plaintiffs argue that the analysis in another district court supported a reasonable claim to standing. That court held that (1) smaller, non-ISP providers of email servers and hosting services could qualify as IAS providers; and (2) a declaration of "decreased server response and crashes," "higher bandwidth utilization," and "expensive hardware and software upgrades" constituted sufficient evidence of harm. *See Hypertouch, Inc. v. Kennedy-Western Univ.*, C 04-05203, 2006 WL 648688, at *3, *4 (N.D. Cal. Mar. 8, 2006). Yet, Plaintiffs should have seen the weakness of their case, even considering *Hypertouch*. First, the Ninth Circuit has rejected the *Hypertouch* court's overly broad interpretation of IAS providers. *Gordon*, 575 F.3d at 1051–52. Second, the *Hypertouch* plaintiff also provided evidence of "thousands of spam messages" received by its servers, making its harms credible. *Hypertouch*, 2006 WL 648688, at *4. The thousands of spam messages bombarding the *Hypertouch* plaintiff's servers are not reasonably comparable to the handful of messages Johansen sent to email accounts hosted by Plaintiffs.

Finally, awarding attorneys' fees serve as a general deterrent. Plaintiffs' conduct may have been less flagrant than that of the *Gordon* plaintiffs, who filed at least a dozen federal actions and were "testing their luck at making their 'spam business' extraordinarily lucrative by seeking statutory damages through a strategy of spam collection and serial litigation." *Gordon*, 2007 WL 2253296, at *5–6. Nonetheless, the circumstances suggest that Plaintiffs filed a second suit against Johansen—their former contractor—in retribution for trying to steal their clients and suing them for alleged unpaid compensation. Both the timing of this suit and the flimsy evidentiary support for their claims suggest as much.[2] This does not align with the CAN-SPAM's purpose: to curb

---

[2] Plaintiffs also argued Johansen committed "technological sabotage" in relation to their CFAA claims. (Dkt. 16 at 4). They likewise failed to adduce any evidence to support such claims at summary judgment. (Dkt. 43 at 11). Though

bulk sending of fraudulent, deceptive, or otherwise offensive spam messages. It was not to chill commercial email marketing in general, even marketing aimed at poaching clients from former business associates. Other laws (such as those Plaintiffs sued Johansen under in their first federal lawsuit) address unfair business practices. Plaintiffs' attempt to weaponize CAN-SPAM as a retributive tool against a competitor was a waste of Johansen's resources and an abuse of the judicial process. Awarding attorneys' fees to the prevailing defendant here deters prospective plaintiffs seeking to invoke CAN-SPAM for improper motives, particularly those without at least some evidence that they have statutory standing.

## II.    Rule 11 Sanctions

Alternatively, Johansen argues that he is entitled to attorneys' fees under Rule 11. Although the Court has found a fee award under CAN-SPAM appropriate here, it is worth addressing Rule 11 sanctions. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2); *see also Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003) ("Party-initiated sanctions under Rule 11 depend on the filing of a motion under [Rule 11(c)(2)]."). The prospective motion must also be served on the challenged party in compliance with Rule 5, and it must not be filed with or presented to the court if the party served with the motion withdraws or corrects the challenged claim within 21 days of service. Fed. R. Civ. P. 11(c)(2); *see N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 882 (7th Cir. 2017) ("To mix naval metaphors, the party seeking sanctions must first fire a warning shot that gives the opponent time to find a safe harbor."). Critically, Johansen never filed a separate Rule 11 motion seeking sanctions against Plaintiffs. Nor

---

this demonstrates the weakness of Plaintiffs' CFAA claims rather than their CAN-SPAM claim, it reflects this lawsuit's retributive character.

did his counsel's letters to Plaintiffs' counsel comply with Rule 11's pre-filing procedural requirements.

The Seventh Circuit has recognized that substantial compliance with Rule 11's pre-filing service and safe-harbor provisions may suffice to preserve a party's right to move for sanctions—though not without reservations. *Nisenbaum*, 333 F.3d at 808; *but see N. Ill. Telecom*, 850 F.3d at 887 ("The legal problem is that the substantial compliance theory we adopted in *Nisenbaum* stands alone and is difficult to reconcile with the explicit requirements of the Rule and the clear explanation from the Advisory Committee. No other circuit has adopted this approach."). Even assuming that "substantial compliance" with the warning-shot/safe-harbor provisions satisfies Rule 11, though, its procedural requirements are not met here.

Johansen's counsel sent two letters invoking Rule 11's safe-harbor provision. The first demanded that Plaintiffs' counsel withdraw the Complaint based on claim preclusion. (Dkt. 49-2, Ex. C at 16). But in its opinion denying his motion to dismiss, this Court determined that Johansen's claim-preclusion argument failed. (Dkt. 22). There would be no justification, then, to grant a motion for sanctions against Plaintiffs for maintaining their Complaint against a losing argument, even had Johansen subsequently filed such a motion.

Nor does the second letter justify sanctions. Although Johansen's legal arguments prevailed at summary judgment, his counsel's letter failed to substantially comply with Rule 11(c)(2). The letter included the subject line, "Request to withdraw complaint pursuant to Rule 11," and stated at the outset, "This letter is sent to you under the safe harbor provisions of Rule 11." (Dkt. 49-2, Ex. D at 18). After explaining why Plaintiffs' claims could not pass muster under CAN-SPAM or CFAA, the letter concludes:

> Based on the foregoing it is our belief that this action was conceived and is being pursued for an improper purpose, with full knowledge that the requisites of the

9

causes-of-action at issue cannot be met. No reasonable technology company, nor reasonable litigant, would engage in this type of litigation. Accordingly, demand is made upon your client to withdraw its claims.

(*Id.* at 25). The letter failed to state an affirmative intention to seek sanctions for Plaintiffs' conduct, nor does it articulate a 21-day window for corrective action. *See N. Ill. Telecom, Inc.*, 850 F.3d at 888 (holding that substantial compliance requires the opportunity to withdraw or correct the challenged pleading within 21 days without imposition of sanctions).

Moreover, Johansen never moved for sanctions against Plaintiffs "separately from any other motion." Fed. R. Civ. P. 11(c)(2). Rather, he added a Rule 11 argument as an alternative basis to support his motion for attorneys' fees. As the Court found in *Northern Illinois Telecom*, Johansen may be entitled "to huff and puff about Rule 11" in its "demands for dismissal of baseless claims. But [his] posturing did not amount even to substantial compliance with the warning-shot/safe-harbor provision, let alone to the actual compliance that other circuits demand." 850 F.3d at 888–89. Accordingly, Rule 11 sanctions are not appropriate here.

## III.    Fee Award Calculation

Having concluded that Johansen is entitled to fees under CAN-SPAM, the Court must calculate the proper award. Courts first calculate a "lodestar" amount by multiplying the attorney's hours on the case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 561 U.S. 424, 433 (1983); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 639 (7th Cir. 2011). The parties agree that Johansen's counsel's rate of $350 per hour is reasonable. (Dkt. 49, Ex. 1 at 3). They disagree as to the attorney hours the fee award should reflect. Plaintiffs argue that the fee award should be limited to those hours reasonably identified as related to the CAN-SPAM counts. (Dkt. 52 at 7). Further, they argue that those hours related to some combination or hybrid of the CAN-SPAM count and

the CFAA counts—if the Court considers them at all in its award—should be reduced by an appropriate percentage. (*Id.*)

The Court agrees the hours reflected in the fee-award calculation should be limited to those spent defending the CAN-SPAM count. Johansen acknowledges that the CFAA does not include a fee-shifting provision. (Dkt. 49 at 14). That statute, then, does not displace the American Rule's presumption that each party bears its own costs. *See Marx*, 568 U.S. at 382. When "distinctly different claims for relief that are based on different facts and legal theories" are presented in a single lawsuit, such unrelated claims should be treated as if they had been raised in separate lawsuits. *Hensley*, 561 U.S. at 435. Here, the CAN-SPAM count was based on both different facts and a different legal theory from the CFAA counts. Plaintiff Lime Crunch brought the CAN-SPAM count against Johansen for allegedly sending spam email messages. (Dkt. 1 ¶¶ 10–32). Plaintiffs brought two CFAA counts against Johansen for allegedly trying to access Plaintiffs' email servers without authorization. (*Id.* ¶¶ 33–51). Johansen's counsel's work on the CFAA counts, therefore, should be treated separately from his work on the CAN-SPAM count. Had they been raised in a separate lawsuit, there would be no basis for a fee award.

In preparing the joint Local Rule 54.3 Statement, Plaintiffs identified $6,930.00 ($350 x 19.8 hours) as billings directly relating to the CAN-SPAM count and $29,554.00 ($350 x 84.44 hours) relating to some combination of the CAN-SPAM count and the CFAA counts. Johansen did not object to those identifications. The Court will include the $6,930.00 and add it to one-third of $29,554.00 to reach a total fee award of $16,781.33.[3]

Finally, Plaintiffs object to certain itemized billing entries as unnecessary, excessive, or superfluous. (Dkt. 52 at 7–8; Dkt. 49-1 at 3–6). They first object to 16.1 hours spent preparing and

---

[3] Without a means of differentiating between hours worked on one count versus the other two for these billings, one-third is a reasonable percentage to approximate counsel's work on the CAN-SPAM count.

filing "a perfunctory and unsuccessful motion to dismiss" and to 28.6 hours spent on the reply

brief in support of Johansen's motion for summary judgment because this "exceeded the time spent

preparing the original motion, memorandum, and statement of material facts." (Dkt. 52 at 7–8;

Dkt. 49-1 at 3). Plaintiffs seek to strike these hours entirely from the fee-award calculation. These

hours appear to be included in the category of work spent on the CAN-SPAM and CFAA counts

in combination, so the fees related to these hours have already been reduced by two-thirds. Further,

they are reasonable. Though Johansen's motion to dismiss was unsuccessful, it was neither

frivolous nor unreasonable. Neither were the reported hours spent on the reply brief excessive

simply because they exceeded the time spent on the opening brief. A reply brief requires analyzing

the opponent's response, researching opposing caselaw, and answering all opposing arguments as

well as reinforcing the arguments made in the opening brief.[4] The time required to do so effectively

is highly contextual, so it is not per se unreasonable for a reply to take more time than an opening

brief. As to Plaintiffs' itemized objections to 16.1 additional hours, the Court has reviewed the

objections and responses and disagrees that they are "duplicative, compound, contradictory, or

vague." (Dkt. 52 at 8; Dkt. 49-1 at 3–6). Johansen's counsel has set forth a reasonable justification

for each challenged billing entry. *See Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437, 444 (7th Cir.

2021) (observing that "district courts need not undertake a line-by-line inquiry" of fee petitions);

*Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("[I]t is generally unrealistic to expect a trial

court to evaluate and rule on every entry in an application.").

---

[4] Normally, the movant on summary judgment would also respond to the opposing party's Local Rule 56.1(b)(3) Statement of Additional Facts, though Plaintiffs here did not submit any additional facts requiring a response under LR 56.1(c)(2). (*See* dkt. 31).

**CONCLUSION**

For these reasons, the Court grants Johansen's motion for attorney's fees under 15 U.S.C.

§ 7706(g)(4) and awards him \$16,781.33.


Virginia M. Kendall
United States District Judge

Date: May 31, 2023